IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LATONYA CLARKE,
Plaintiff,

v.

Civil Action No. 3:20-cv-999

HAROLD CLARKE, et al.
Defendants.

**OPINION**

Adrian Azekiel Mack died on May 25, 2019, after suffering a severe asthma attack while incarcerated at Baskerville Correctional Center. The plaintiff, Latonya Clarke, brings this suit as administratrix of Mack's estate. She alleges that Harold Clarke,[1] Director of the Virginia Department of Corrections ("VDOC"), and Earl Barksdale, Baskerville's Warden,[2] (collectively, "the defendants") violated the Eighth Amendment by allowing Baskerville to have no medical staff onsite between 6:00 p.m. and 7:00 a.m. each day (Count I) and by failing to adequately train Baskerville personnel in basic emergency medical care (Count III).[3]

The defendants move to dismiss both claims against them for failure to state a claim. For the reasons explained below, the Court will deny the motions as to both claims.

---

[1] The plaintiff and Harold Clarke share a surname. To avoid confusion, the Court refers to Harold Clarke as Director Clarke or Mr. Clarke throughout the Opinion.

[2] Earl Barksdale's widow, Treena L. Barksdale, serves as administratrix of her late husband's estate. Accordingly, the plaintiff names Ms. Barksdale—and not Warden Barksdale—as a defendant in this case. For ease of reference, however, the Court refers to Warden Barksdale, throughout this Opinion, as a defendant.

[3] The plaintiff also asserts claims against Lieutenant Kenneth L. Creger, Sergeant Robert Bourne, Officer Shelia D. Alexander, and Officer Floyd L. Rogers. On May 18, 2021, these defendants answered the plaintiff's amended complaint. (ECF No. 35.)

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

Mack began serving his prison sentence at Baskerville in February 2019. Mack's intake records and records from a prior incarceration indicated his history of asthma, beginning during childhood. On March 25, 2019, and April 21, 2019, Mack complained to nurses at Baskerville that he was experiencing wheezing and other asthma symptoms. On the evening of April 27, 2019, Mack suffered a serious asthma attack. Lieutenant Creger responded to Mack's attack by calling Laurie Hightower, a licensed nurse employed at Baskerville. Hightower told Mack to visit "sick call" when possible.

At "sick call" the next day, a nurse gave Mack an inhaler and arranged for him to see a physician "at a later date." (ECF No. 31 ¶ 18.) Mack's inhaler ran out before his next severe attack a month later.

On the evening of May 25, 2019, Mack had "another severe asthma attack[]." (*Id.* ¶ 19.) Struggling to breathe, Mack alerted a fellow inmate, Rishard Whitaker, to his attack. Whitaker sought officer assistance "almost immediately," but fifteen minutes passed before Sergeant Bourne arrived to assist Mack. (*Id.* ¶ 19.) When Bourne finally arrived, he "observed the situation and asked questions" of Whitaker and another inmate, Mario Henley, for about five minutes. (*Id.* ¶ 22.) Finally, Bourne told Whitaker and Henley to carry Mack, who could no longer stand without support, to the infirmary. At the time, Baskerville did not "maintain any trained medical staff onsite from 6:00 p.m. to approximately 7:00 a.m. on any day of the week." (*Id.* ¶ 41.)

When they arrived at the infirmary, Mack "was drooling and largely unresponsive and his fingertips were purple and cold to the touch." (*Id.* ¶ 23.) Whitaker and Henley observed an oxygen tank and mask in the infirmary and "asked the attending guards to provide Mr. Mack with supplemental oxygen." (*Id.*) "One of the guards responded that no one was trained to use the oxygen tank and mask, so no oxygen therapy could be provided to Mr. Mack." (*Id.*) "None of the

guards on duty effected any substantive emergency treatment to Mr. Mack before or after he arrived at the infirmary." (*Id.* ¶ 24.)

"Approximately twenty minutes after Mr. Mack reached the infirmary, one of the guards called 911 to request an ambulance." (*Id.* ¶ 25.) Southside Rescue Squad, Inc., the closest rescue squad to Baskerville, responded to the call. "It takes Southside Rescue at least fifteen minutes to travel from its headquarters in South Hill to Baskerville Correctional Center," (*id.*), and "it took approximately seven minutes after arriving on the scene for Southside Rescue to reach Mr. Mack in the infirmary," (*id.* ¶ 28).

When Southside Rescue reached Mack, "they found [him] being held up in a chair, foaming at the mouth," and breathing erratically. (*Id.* ¶ 29.) He scored a three on the Glasgow Coma Scale, "indicat[ing] deep coma or brain-dead state." (*Id.*) "None of the emergency treatments" that Southside Rescue administered "succeeded in resuscitating Mr. Mack from his dire condition." (*Id.* ¶ 30.) Southside Rescue then transported Mack to VCU Health Community Memorial Hospital.

At 8:15 p.m., a doctor at the hospital declared Mack dead. (*Id.*) The Chief Medical Examiner identified Mack's cause of death as asthmaticus, "an extreme form of asthma exacerbation." (*Id.* ¶ 33.)

## II. DISCUSSION[4]

Counts I and III of the plaintiff's amended complaint allege violations of the Eighth

[4] A Rule 12(b)(6) motion gauges a complaint's sufficiency without resolving any factual discrepancies or testing the claims' merits. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim. *Id.* "A claim has facial plausibility

Amendment under 42 U.S.C. § 1983[5] arising from the lack of medical staff at Baskerville between 6:00 p.m. and 7:00 a.m. each day and the failure to adequately train Baskerville personnel in emergency medical care.[6]

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). By prohibiting cruel and unusual punishments, the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

---

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

[5] Section 1983 of Title 42 of the United States Code provides

> Every person who, under color of any [state law] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[6] The defendants argue that Counts I and III act as duplicates because failure to train claims are subsumed into the "policy or custom" claim. (ECF No. 37, at 15; ECF No. 41, at 16.) Both claims seek to hold the defendants liable, in their individual capacities, for violating the Eighth Amendment, but the claims pursue different theories of liability. In Count I, the plaintiff alleges that the defendants exhibited deliberate indifference by allowing Baskerville to lack onsite medical staff for thirteen hours each day. In Count III, the plaintiff alleges that the defendants exhibited deliberate indifference by failing to adequately train Baskerville personnel to respond to medical emergencies like Mack's. For clarity, the Court will allow Counts I and III to remain as separate counts. *Cf. Adams v. NaphCare, Inc.*, 244 F. Supp. 3d 546, 549–50 (E.D. Va. 2017) (declining to dismiss a plaintiff's claims when the defendant argued "that the claims are 'duplicative'").

### *A. Count I: Inadequate Medical Staff*

#### *1. Supervisory Liability*

The plaintiff alleges that the defendants violated the Eighth Amendment by allowing Baskerville to have no medical staff onsite between 6:00 p.m. and 7:00 a.m. each day. Proceeding under a supervisory liability theory, the plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

##### *a. Actual or Constructive Knowledge*

To satisfy the first element—actual or constructive knowledge—the plaintiff must allege "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury." *Id.* "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citations omitted).

Here, the plaintiff contends that "Mr. Clarke and Warden Barksdale had direct and specific knowledge" that Baskerville maintained "constitutionally inadequate medical staffing . . . from 6:00 p.m. to 7:00 a.m" each day. (ECF No. 31 ¶ 57); *see also* Fed. R. Civ. P. 9(b) ("[C]onditions of a person's mind may be alleged generally."). Further, the plaintiff accuses the defendants of knowing that the lack of medical staff onsite for those thirteen hours each day "was completely inadequate to deal with inmate medical issues" and "created an unreasonable, foreseeable, and

unnecessary risk of harm to inmates with serious medical needs." (*Id.* ¶ 44.) At this stage of litigation, and given Clarke's position as Director of the VDOC and Barksdale's position as Baskerville's Warden, the Court finds these allegations plausible. Indeed, Virginia law charges the Director of the VDOC with the duty and power "[t]o supervise and manage the [VDOC] and its system of state correctional facilities." Va. Code § 53.1-10. Further, "[t]he Director may prescribe rules for . . . the health of prisoners in state correctional facilities." *Id.* § 53.1-25. And, according to VDOC Operating Procedure, each warden of a VDOC facility "is in charge of all inmates/probationers/parolees, personnel, volunteers, programs, and activities connected with the facility." (ECF No. 44-2, at 3.) Further, each facility's health authority (the administrator of the facility's medical department) "shall report to" to the warden "any serious health threats that may affect staff and offender health and safety." (*Id.*) In addition, the warden, "in conjunction with the [h]ealth [a]uthority, will ensure that offenders have timely access to, and are provided adequate health care services." (ECF No. 44-1, at 2.) Considering the responsibility and authority held by the Director of the VDOC and Baskerville's Warden, the Court finds it plausible that the defendants *knew* of Baskerville's policy regarding onsite medical staffing and the risks it posed to the inmates housed there.

Thus, the plaintiff's complaint satisfies the first element of her supervisory liability claim arising from inadequate medical staff.

*b. Deliberate Indifference*

A plaintiff must also show a supervisor's "deliberate indifference to or tacit authorization of the alleged offensive practices." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001). Holding "a supervisor liable under a tacit authorization theory requires pleading facts supporting the inference that the 'supervisor fail[ed] to take action in response to a known pattern of

comparable conduct occurring before the incident at issue took place.'" *DJ ex rel. Hughes v. Sch. Bd. of Henrico Cnty.*, 488 F. Supp. 3d 307, 330 (E.D. Va. 2020) (quoting *Danser v. Stransberry*, 772 F.3d 340, 350 (4th Cir. 2014)). "Deliberate indifference cases may present on a sliding scale and involve conduct that appears as 'something more than negligence but less than intentional conduct, such as recklessness or gross negligence.'" *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

According to the plaintiff, the defendants knew that Baskerville maintained no onsite medical staff between 6:00 p.m. and 7:00 a.m. each day. Although the amended complaint does not clarify when Baskerville began lacking onsite medical staff for thirteen hours each day, the plaintiff says the practice continued "[a]t all times relevant." (ECF No. 31 ¶ 15.) The Court infers that, at minimum, Baskerville maintained this practice between February and April 2019. The plaintiff also accuses the defendants of knowing that Baskerville's practice "posed a recognized and patent risk to the health and safety of inmates," many of whom have medical needs that could require emergency medical attention at any time. (*Id.* ¶ 56.) Despite this knowledge, neither of the defendants intervened to change Baskerville's practice and require it to maintain onsite medical staff at all times. Clarke, as Director of the VDOC, certainly could have intervened; indeed, he has the authority and duty to "supervise and manage the Department and its system of state correctional facilities." Va. Code § 53.1-10. And Barksdale, as Warden, could also have intervened; VDOC Operating Procedure charges him with "ensur[ing] that offenders have timely access to, and are provided adequate health care services." (ECF No. 44-2, at 3.) According to the plaintiff, the defendants' inaction despite Baskerville's practice and the risks it posed constituted deliberate indifference. At this stage of litigation, the Court agrees. The plaintiff, therefore, satisfies the second element of her supervisory liability claim.

*c. Causation*

The third element requires that the plaintiff show "an affirmative causal link between [the defendants'] inaction and the particular constitutional injury suffered by [Mack]." *Shaw*, 13 F.3d at 799. "This concept encompasses cause in fact and proximate cause." *Id.* In other words, the "proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains ... [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." *Id.* (quoting *Slakan*, 737 F.2d at 376).

In this case, the Court draws the reasonable inference that because neither of the defendants intervened, Baskerville continued to lack onsite medical staff for thirteen hours each day. This dearth of onsite medical staff, in turn, "resulted directly in (i) the severely delayed response to Mr. Mack's medical emergency; (ii) the inexplicable delay in officers at Baskerville Correctional Center calling 911 . . . ; and (iii) the failure to administer supplemental oxygen treatment to Mr. Mack." (ECF No. 31 ¶ 55.) And because of these delays and the failure to administer oxygen to Mack, he entered a "deep coma or brain death prior to the arrival of Southside Rescue at Baskerville." (*Id.*) Perhaps Mack's condition would not have deteriorated as severely had he received medical assistance more quickly. In making these allegations, plaintiff plausibly alleges an affirmative causal link between Mack's death and the defendants' failure to require Baskerville to maintain onsite medical staff at all hours.

* * *

Because the plaintiff plausibly alleges that the defendants violated the Eighth Amendment by failing to require that Baskerville maintain onsite medical staff at all times, the Court will deny the defendants' motions to dismiss as to Count I.

2. <u>*Direct Liability*</u>

The plaintiff appears to pursue, in the alternative, Count I under a direct liability theory. To assert a claim for deliberate indifference through direct liability, the plaintiff must show that: (1) Mack had a serious medical need; (2) the defendants were deliberately indifferent to that need; and (3) the defendants' deliberate indifference caused Mack's injury. *See Farmer*, 511 U.S. at 832–34; *c.f. Pfaller v. Clarke*, No. 3:19cv728, 2021 WL 1724933, at *5 n.10 (E.D. Va. Apr. 30, 2021) (establishing a supervisor's direct liability for deliberate indifference requires that supervisor's sufficient personal involvement in the inmate's medical care). "An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018).

*a. Serious Medical Need*

The defendants concede that Mack "had a serious medical need on the evening that he had a severe asthma attack and died." (ECF No. 37, at 9; ECF No. 41, at 9.) They contest, however, that their decisions not to require that Baskerville maintain onsite medical staff at all times demonstrated deliberate indifference that caused Mack's death.

*b. Deliberate Indifference*

To show the defendants' deliberate indifference, the plaintiff need not prove that either knew of Mack's asthma attack. *See Gordon v. Schilling*, 937 F.3d 348, 362 (explaining that VDOC's Chief Physician "may not escape liability by claiming he did not know the identities of the inmates who would suffer under his policies"). Instead, the plaintiff must show that the defendants knew that many inmates have serious medical needs that, like Mack's, could require emergency care at any time. *Cf. id.* at 359 (allowing a deliberate indifference claim to proceed

against the VDOC's Chief Physician because "a factfinder could determine that [he] knew that [the Hepatitis C virus] is a serious disease that affects a large percentage of those incarcerated in VDOC facilities"). At this stage of litigation, the Court draws the reasonable inference that because Director Clarke was responsible for all oversight, operation, and administration of the Commonwealth of Virginia's correctional system, including providing access to adequate medical treatment to inmates, *see* Va. Code §§ 53.1-10, -25, and because Warden Barksdale was in charge of ensuring that all of Baskerville's inmates had "timely access to, and are provided adequate health care services," (ECF No. 44-2, at 3), both knew that Baskerville did not maintain onsite medical staff at all times and that many inmates have serious medical needs that could require medical care at any hour. Further, the plaintiff alleges that the defendants disregarded the inmates' serious medical needs and their associated risks by allowing Baskerville to lack onsite medical staff for thirteen hours each day. (*See* ECF No. 31 ¶ 44 ("Mr. Clarke and Warden Barksdale knew that failing to maintain any trained medical staff onsite between 6:00 p.m. and 7:00 a.m. was completely inadequate to deal with inmate medical issues" and that it "created an unreasonable, foreseeable, and unnecessary risk of harm to inmates with serious medical needs"). By making this accusation, the plaintiff sufficiently alleges the defendants' deliberate indifference; specifically, that they "exhibited a disregard for the substantial risk of harm" that Baskerville's periodic lack of onsite medical staff "presented to [its] inmates." *Gordon*, 937 F.3d at 361.

*c. Causation*

Finally, the plaintiff adequately alleges a causal connection between the defendants' deliberate indifference and Mack's death. According to the plaintiff, because neither of the defendants required that Baskerville maintain onsite medical staff at all times, Baskerville continued its practice of sending home its medical staff at 6:00 p.m. Because of this practice, no

medical professionals were present to assist Mack when he reached the infirmary on April 27, 2019. As a result, after arriving at the infirmary, Mack waited about forty minutes before receiving medical attention from Southside Rescue. This delay—which would not have happened if trained medical staff had been onsite—plausibly exacerbated Mack's condition and "result[ed] in [his] deep coma or brain death." (ECF No. 31 ¶ 55.)

*   *   *

For these reasons, to the extent the plaintiff alleges Count I against the defendants through a direct liability theory, the claim can proceed. Because the Court cannot discern whether the plaintiff pursues Count I against the defendants under a direct or supervisory liability theory, the Court will direct the plaintiff to file a second amended complaint that clarifies which theory of liability she pursues against the defendants. If the plaintiff pursues both theories of liability, she shall set forth the theories of liability as separate counts.

### *B. Count III: Failure to Train*

Count III alleges that the defendants violated the Eighth Amendment by failing to adequately train VDOC personnel (specifically, Baskerville's prison officers) in basic emergency care. "To impose liability on a supervisor for the failure to train subordinates, a plaintiff must plead and prove that: (1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 701 (E.D. Va. 2004).

1. Violation of Rights by Subordinates

Here, the plaintiff contends that Baskerville prison officers—the defendants' subordinates—demonstrated deliberate indifference to Mack's serious medical need, thereby violating his Eighth Amendment right to adequate medical care. "[T]he plaintiff asserting this type of Eighth Amendment claim must show that: (1) objectively the medical need was serious; and (2) subjectively the guards acted with a sufficiently culpable state of mind, that is, they failed to act in the face of a subjectively known risk." *Id.*

The plaintiff alleges that Mack suffered from asthma attacks, an objectively serious medical condition, and that the prison officers "were well aware of Mr. Mack's history of asthma." (ECF No. 31 ¶ 20.) Despite this awareness, the prison officers took "[a]pproximately fifteen minutes" to respond after Whitaker alerted them to Mack's medical condition. (*Id.* ¶ 22.) After finally arriving at Mack's housing unit, the officers observed that Mack could not stand without assistance. And yet, the officers spent five minutes asking Henley and Whitaker questions, instead of rushing Mack to the infirmary. When Mack reached the infirmary, despite signals of his medical distress, the prison officers declined to "provide Mr. Mack with supplemental oxygen" because "no one was trained to use the oxygen tank and mask." (*Id.*) And then, "[a]pproximately twenty minutes" passed before "one of the guards called 911 to request an ambulance." (*Id.* ¶ 25.) By delaying the provision of necessary medical care to Mack, the officers "were deliberately indifferent to Mr. Mack's serious medical needs." (*Id.* ¶ 62.) Because these allegations state an Eighth Amendment claim against the defendants' subordinates, the plaintiff satisfactorily pled the first element of a failure to train claim against the defendants.

2. Deliberate Indifference

The next element of her failure to train claim requires the plaintiff to allege that the

defendants' failure to provide training to prison officers "on the proper administration of basic emergency medical care" amounts to deliberate indifference to the rights of Baskerville's inmates. (*Id.* ¶ 68.) "[A] supervisory power cannot be liable . . . for the actions of its subordinates unless it is on fair notice that subordinates are engaged in constitutional or statutory deprivations." *Brown*, 308 F. Supp. 2d at 703. "[A] plaintiff can establish that a supervisory power was on notice of the need to train in one of two general ways:" by showing (1) that "policymakers were aware of, and acquiesced in, a pattern of constitutional violations," *City of Canton v. Harris*, 489 U.S. 378, 397 (2003), or (2) that the policymaker failed to provide adequate training that concerns "a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face," *Brown*, 308 F. Supp. 2d at 706 (quoting *Harris*, 489 U.S. at 396).[7] The Eighth Amendment requires that prison officers "must not be deliberately indifferent to a serious medical situation." *Id.* "Moreover, that Eighth Amendment duty is implicated in recurrent situations because, during his or her tenure, every Jail guard is almost certain to be in charge of inmates with serious medical conditions." *Id.*

The plaintiff alleges that the defendants exhibited deliberate indifference by failing to adequately train Baskerville personnel in basic emergency medical care. To support this allegation, the plaintiff cites the prison officers' dilatory response to Mack's medical emergency, and failure to provide any emergency treatment, or inability to operate the infirmary's oxygen tank. Because this allegation implicates "a clear and recurrent constitutional right"—the right to receive adequate medical care in prison—the plaintiff's allegations satisfy the second element of a failure to train claim against the defendants.

---

[7] *See Connick v. Thompson*, 563 U.S. 51, 63–64 (2011) (explaining that by alleging a "highly predictable consequence, namely violations of constitutional rights," a plaintiff may demonstrate deliberate indifference without documented widespread abuses).

3. Causation

Finally, a plaintiff proceeding under a failure to train theory must allege "an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799. Here, the plaintiff alleges that because of the prison officers' inadequate training, they tarried after learning of Mack's distress and failed to administer any emergency care. As a result, after alerting the prison officers to his situation, Mack waited more than fifty-five minutes to receive any medical care. Drawing all reasonable inference in the plaintiff's favor, "it is not improbable that [the plaintiff] will be able to establish that [the defendants'] failure to train [their] subordinates caused [Mack's] death." *Brown*, 308 F. Supp. 2d at 707. Maybe Mack would still have died if, after hearing of his condition, the prison officers had run to Mack, quickly taken him to the infirmary, administered oxygen, and promptly called 911. But maybe not. As a result, the plaintiff's allegations satisfy the third element of a failure to train claim.

* * *

Because the plaintiff plausibly alleges that the defendants violated the Eighth Amendment by failing to adequately train Baskerville's prison officers in basic emergency care, the Court will deny the defendants' motions to dismiss Count III.

## III. CONCLUSION

For the foregoing reasons, the Court will deny the defendants' motions to dismiss the plaintiff's claims against him (Counts I and III).

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

/s/
**John A. Gibney, Jr.**
**United States District Judge**

Date: 14 July 2021
Richmond, VA